William R. Baldiga, Esq.
Nina E. Andersson, Esq.
Caleb B. Piron, Esq.
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to the Debtor
and the Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PARTSEARCH TECHNOLOGIES, INC.,[1] | ) Case No. 11-10282 (MG) |
| | ) |
| Debtor | ) |
| | ) |

## DEBTOR'S REPORT AND MEMORANDUM OF LAW IN SUPPORT OF SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS

---

[1] The last four digits of the Debtor's taxpayer identification number are: 5335. Partsearch Technologies, Inc. is a Delaware corporation qualified to do business in the State of New York.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 2

JURISDICTION AND VENUE .......................................................................... 3

STATEMENT OF FACTS ................................................................................. 4

    A. The Chapter 11 Case ............................................................................. 4

    B. Sale Process and Auction Results ....................................................... 5

        1. Pre-Petition Marketing Process ................................................... 5

        2. Stalking Horse APA Agreement .................................................. 6

        3. Sale Motion and Entry of Sale Procedures Order ....................... 6

        4. Post-Petition Marketing Process .................................................. 6

        5. Bids ............................................................................................. 7

        6. Auction ........................................................................................ 8

        7. Winning Bid ................................................................................ 8

            a. Terms of Best Buy APA .................................................... 9

            b. Extraordinary Provisions Under Best Buy Transaction Agreements ............ 11

ARGUMENT ................................................................................................... 12

THE REVISED PROPOSED SALE ORDER SHOULD BE GRANTED ON THE TERMS PROPOSED .................................................................................................. 12

    A. The Sale is a Product of the Debtor's Reasonable Business Judgment ...................... 13

        1. The Assets Should be Sold Promptly To Preserve Value for the Estate ............. 14

        2. Best Buy's Prevailing Bid Was "Highest" and "Best" ........................................ 14

        3. The Proposed Sale Will Maximize the Debtor's Ability to Pay Claims .............. 15

        4. The Sale is the Product of Good Faith, Arm's Length Negotiations ................... 15

        5. Under the Terms of the Proposed Sale, the Debtor's Estate Will Receive Fair Value ...................... 16

    B. The Sale Of The Debtor's Assets Free And Clear Of Liens Is Authorized By Section 363(f) Of The Bankruptcy Code ....................... 17

    C. Assumption and Assignment of the Assumed Contracts Should be Approved .......... 18

    D. The Proposed Sale Does Not Violate Section 363(n) Of The Bankruptcy Code ................. 20

**CONCLUSION** ............................................................................................ 20

**Exhibit A** Revised Proposed Sale Order ............................................... 22

**<u>Cases</u>**

*Birdsell v. Fort McDowell Sand & Gravel (In re Sanner)*,
   218 B.R. 941 (Bankr. D. Ariz. 1998).................................................................................. 20

*Comm. Of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.)*,
   60 B.R. 612 (Bankr. S.D.N.Y. 1986) ................................................................................ 13

*Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*,
   107 F.3d 558 (8th Cir. 1997) ............................................................................................ 14

*FutureSource LLC v. Reuters Ltd.*,
   312 F.3d 281 (7th Cir. 2002) ............................................................................................ 18

*Indiana State Police Pension Trust v. Chrysler LLC*,
   130 S. Ct. 1015 (2009)...................................................................................................... 13

*In re Castre, Inc.*,
   312 B.R. 426 (Bankr. D. Colo. 2004) ............................................................................. 15

*In re Chrysler LLC*,
   576 F.3d 108(2d Cir. 2009)............................................................................................... 12

*In re Chrysler, LLC*,
   405 B.R. 84 (Bankr. S.D.N.Y. 2009) .............................................................................. 14

*In re Chrysler, LLC*,
   592 F.3d 370 (2d Cir. 2010).............................................................................................. 13

*In re Elliot*,
   94 B.R. 343 (E.D. Pa. 1988) ........................................................................................... 18

*In re Enron Corp.*,
   No. 01- 16034 (AJG), 2004 WL 5361245 (Bankr. S.D.N.Y. Feb. 5, 2004)..................... 18

*In re Fitzgerald*,
   428 B.R. 872 (B.A.P. 9th Cir. 2010)................................................................................ 17

*In re Gabel*,
   61 B.R. 661 (Bankr. W.D. La. 1985) ............................................................................... 18

*In re General Motors Corp.*,
   407 B.R. 463 (Bankr. S.D.N.Y. 2009),............................................................................ 14

*In re Global Crossing Ltd.*,
   295 B.R. 726 (Bankr. S.D.N.Y. 2003) ............................................................................ 16

*In re Integrated Res., Inc.*,
   147 B.R. 650 (S.D.N.Y. 1992)................................................................................... 13, 14

*In re Iridium Operating LLC*,
   478 F.3d 452 (2d Cir. 2007).............................................................................................. 13

*In re James*,
   203 B.R. 449 (Bankr. W.D. Mo. 1997)............................................................................ 18

*In re Loral Space & Com. Ltd., et al.*,
   Case No. 03- 41710 (RRD), (Bankr. S.D.N.Y. Oct. 24, 2003) ........................................ 16

*In re Tabone, Inc.*,
   175 B.R. 855 (Bankr. D.N.J. 1994) ................................................................................. 18

*In re Transworld Airlines, Inc.,*
  2001 WL 1820326 (Bankr. D. Del. Apr. 2, 2001) ..................................... 17
*In re WestPoint Stevens, Inc.,*
  No. 03-13532 (RDD), (Bankr. S.D.N.Y. June 29, 2005) ......................... 18
*Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.),*
  78 F.3d 18 (2d Cir. 1996)........................................................................ 18
*Official Committee of Subordinated Bondholders v. Integrated Res., Inc. (In re*
  *Integrated Res., Inc.),*
  147 B.R. 650 (Bankr. S.D.N.Y. 1992)..................................................... 14
*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),*
  4 F.3d 1095 (2d Cir. 1993)...................................................................... 18
*Parker v. Motors Liquidation Company (In re Motors Liquidation Co.),*
  430 B.R. 65 (S.D.N.Y. 2010).............................................................. 12, 14
*Simantob v. Claims Prosecutor, LLC. (In re Lahijam),*
  325 B.R. 282 (B.A.P. 9th Cir 2005)........................................................ 17
*Smith v. Van Gorkom,*
  488 A.2d 858 (Del. 1985) ........................................................................ 13

## Statutes
28 U.S.C. § 157(b) .......................................................................................... 3
28 U.S.C. §§ 1408 and 1409 ........................................................................... 3
28 U.S.C. §§ 157 and 1334 .............................................................................. 3
11 U.S.C. §§ 363(b)(1) .................................................................................. 12
11 U.S.C. §§ 363(f) ....................................................................................... 17
11 U.S.C. §§ 363(n) ...................................................................................... 20
11 U.S.C. §§ 363(a) ...................................................................................... 18
11 U.S.C. §§ 365(b) ...................................................................................... 19

## Rules
Fed. R. Bankr. P. 6004(h) and 6006(d)......................................................... 12

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, respectfully submits this report and memorandum of law ("Memorandum") in support of: (1) the *Debtor's Motion for Orders (I) (A) Authorizing and Approving Auction and Sale Procedures in Connection with the Debtor's Asset Sale, Including Stalking Horse Bid Protections, (B) Approving the Form and Manner of Notice of the Asset Sale and the Hearing thereon, (C) Approving the Form and Manner of the Contract Notice and the Assumption Notice, (D) Establishing Dates and Deadlines Relating to Bidding and Asset Sale Approval, and (E) Granting Related Relief; and (II) Authorizing and Approving (A) the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Entry Into and Performance Under the Asset Purchase Agreement and Related Agreements, (C) the Assumption and Assignment of Certain Executory Contracts, and (D) Related Relief* [Docket No. 12] (the "Sale Motion");[2] and (2) the *Order Authorizing and Approving (A) Proposed Sale of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Entry Into and Performance Under the Best Buy Assets Purchase Agreement and Related Agreements, (C) the Assumption and Assignment of Certain Executory Contracts, and (D) Related Relief,* annexed hereto as Exhibit A (the "Revised Proposed Sale Order").[3]

The Debtor intends for this Memorandum and the *Declaration of Lawton W. Bloom in Support of Debtor's Report and Memorandum of Law in Support of Sale of Substantially All of*

---

[2]  Capitalized terms used herein and not defined shall have the meanings ascribed to them in the Sale Motion or the Sale Procedures for the Submission, Receipt and Analysis of Bids in Connection With the Sale of Substantially All of the Debtor's Assets (the "Sale Procedures"), attached as Exhibit A to the *Order (A) Authorizing and Approving Auction and Sale Procedures in Connection with the Debtor's Asset Sale, Including Stalking Horse Bid Protections, (B) Approving the Form and Manner of Notice of the Asset Sale and the Hearing Thereon, (C) Approving the Form and Manner of the Contract Notice and the Assumption Notice, (D) Establishing Dates and Deadlines Relating to Bidding and Asset Sale Approval, and (E) Granting Related Relief* [Docket No. 39] (the "Sale Procedures Order"), as applicable.

[3]  The Debtor has consulted with the Committee and the Successful Bidder as to the attached Revised Proposed Sale Order, and the Successful Bidder has reserved its right to request additional revisions to such order prior to the Sale Hearing.

*Debtor's Assets* (the "Bloom Declaration") filed contemporaneously herewith to report the outcome of the Auction for the sale (the "Sale") of the Debtor's Assets (as defined herein) conducted on March 22, 2011, and to provide the Court with evidence in support the approval of the Sale of the Assets to the Successful Bidder, as set forth in the Revised Proposed Sale Order. The Debtor also relies on and incorporates the Sale Motion as if fully set forth herein. Finally, the Debtor notes that the Official Committee of Unsecured Creditors appointed in this chapter 11 case (the "Committee") has indicated to the Debtor that it supports the Sale of the Assets to the Successful Bidder.

## PRELIMINARY STATEMENT

The Debtor respectfully seeks the Court's approval to consummate the Sale of the Assets to Best Buy Co., Inc. ("Best Buy"), the Successful Bidder at the Auction. The Assets consist of substantially all business assets of the Debtor's estate as defined in Section 2.1 of the Asset Purchase Agreement, a form of which is annexed as Exhibit A to the Bloom Declaration, to be entered into by the Debtor, as seller, and Best Buy, as purchaser (as such agreement is amended or modified by the parties, the "Best Buy APA",[4] and collectively with all related agreements (including, without limitation, any related operating agreements and/or escrow agreements), documents or instruments and all exhibits, schedules and addenda to any of the foregoing the "Best Buy Transaction Agreements")), including the Debtor's intellectual property assets and certain physical assets, but excluding certain assets set forth in Section 2.2 of the Best Buy APA, which consist primarily of cash, causes of action, accounts receivable, prepaid expenses and the Excluded Contracts (the "Assets").

---

[4] The Successful Bidder has reserved its right to request additional revisions to the Best Buy APA prior to the Sale Hearing.

The sale process was led by Argus Management Corporation ("Argus"), the Debtor's Chief Restructuring Officer. Argus obtained signed confidentiality agreements from seventeen interested parties, which then conducted due diligence in a virtual data room established by the Debtor. Four of these parties also conducted on site due diligence at the Debtor's facilities. Ultimately, two bidders qualified for and participated in the auction: ELDIS, Inc., ("ELDIS" or "Stalking Horse Bidder") and Best Buy.

The auction was highly successful. The Successful Bid was submitted by Best Buy in the amount of $6,405,000, which, for the purposes of the Auction, the Debtor has valued at $6,100,000.[5] For comparison's sake, the Successful Bid more than doubled the value of the Stalking Horse Bid, which was $2,875,000.

The Debtor submits that the proposed Sale should be approved as a sound exercise of its business judgment. The Sale transaction will maximize the value received for the Assets, and is clearly in the "best interests" of the Debtor, its estates, all creditors taken as a whole and other parties in interest. The value to be obtained from the Sale will permit the Debtor to pay the claims of creditors to the greatest extent possible under the circumstances.

## JURISDICTION AND VENUE

This Court has jurisdiction to consider this Memorandum pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[5] As discussed below, the Debtor, after consultation with the Committee, determined that the Best Buy offer terms were somewhat different from the terms of the Stalking Horse Bid, and that to make fair comparison of the two the Best Buy bid would carry a negative adjustment of $305,000 for the purposes of the Auction. The Best Buy bid was thus required to top the Stalking Horse bid by the minimum bid increment of $25,000 PLUS $305,000, and the auction proceeded with full disclosure and appreciation of that point by all concerned.

## STATEMENT OF FACTS

### A.    The Chapter 11 Case

On January 25, 2011, certain unsecured creditors filed an involuntary petition under chapter 7 of the Bankruptcy Code against the Debtor. On January 27, 2011, the Debtor filed its own voluntary petition for relief under chapter 11 of the Bankruptcy Code, and on February 2, 2011, the Court entered an order consolidating the Debtor's chapter 7 and chapter 11 cases and converting the chapter 7 case to a chapter 11 case for all purposes (the "Chapter 11 Case"). The "Petition Date" for the Debtor's bankruptcy case is deemed January 25, 2011, and the date an order of relief was entered with respect to the Debtor's bankruptcy case is deemed January 27, 2011.

A description of the Debtor's business and the reasons for commencing this Chapter 11 Case are set forth in the *Affidavit of Lawton W. Bloom in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2* [Docket No. 2] (the "First Day Affidavit"). In short, the Debtor's lack of financial resources, due in large part to the termination of the Debtor's services by its largest client, Best Buy, make it impractical for the Debtor to continue its operations, which are currently already limited. The Debtor is currently operating on a cash-negative basis. The Debtor determined that it was necessary to enter into an agreement to sell substantially all of its assets and otherwise wind-down and liquidate its remaining business operations and assets in order to maximize recoveries for all stakeholders.

The Debtor is continuing in possession of its property as debtor-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case. On February 8, 2011, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in this Chapter 11 Case.

## B. Sale Process and Auction Results

### 1. Pre-Petition Marketing Process

Following the termination of the Best Buy relationship prior to the Petition Date, the Debtor commenced discussions with several parties relating to a potential sale of substantially all of its assets. In order to preserve the rapidly diminishing value of its business and prevent the attrition of certain key employees, the Debtor attempted to secure a favorable purchase offer as quickly as possible under the circumstances.

As more fully set forth in the First Day Affidavit, since the inception of Argus's engagement, Argus has been focused on conducting a timely sales process of the Debtor. In order to effectively market the Debtor's assets, Argus met with various key current and former personnel of the Debtor to review the Debtor's historical financials and marketing materials. Additionally, Argus used the Debtor's networked files to locate key information including contracts, historical financials, and management reports. Argus created a marketing presentation and organized key information into an online data room that was made available to potential investors.

On behalf of the Debtor, Argus reached out to twenty-four parties prior to the bankruptcy filing to determine their interest in pursuing a purchase of the Debtor's assets. Thirteen of the addressed parties agreed to do further diligence and signed confidentiality agreements. Of the thirteen interested parties, Argus received indications of interest from five parties, of which one was only related to obtaining the rights to the Partstore.com url. Of the remaining four potential investors who were interested in acquiring the operating assets of the Debtor, Argus continued dialogue with three of the potential purchasers, since the fourth submitted an offer which was well below the range proposed by the other interested parties.

## 2. Stalking Horse APA Agreement

Prior to the Petition Date, ELDIS demonstrated the most interest in acquiring the Debtor's operating assets and ultimately provided the highest valued indication of interest. Argus arranged site visits for ELDIS on December 13, 2010 through December 15, 2010. Ultimately, ELDIS agreed to become the Stalking Horse Bidder, and the Debtor entered into the Asset Purchase Agreement, dated January 27, 2011, between the Debtor, as seller, and ELDIS, Inc., as purchaser, annexed as Exhibit D to the Sale Motion (the "Stalking Horse APA"). The consummation of the Stalking Horse APA was subject to, *inter alia*, the results of the Auction. Argus continued marketing the Debtor's assets and working with potential counter-bidders after entering into the Stalking Horse APA.

## 3. Sale Motion and Entry of Sale Procedures Order

On January 27, 2011, the Debtor filed the Sale Motion which, *inter alia*, sought entry of the Sale Procedures Order. On February 14, 2011, this Court entered the Sale Procedures Order. In accordance with the requirements of the Sale Procedures Order, the Debtor conducted orderly marketing and bidding processes and an auction for the going-concern sale of the Assets pursuant to Section 363 of the Bankruptcy Code, as set forth below.

## 4. Post-Petition Marketing Process

Subsequent to the filing of the Sale Motion, the Debtor actively marketed the Assets. Over a two week span, the Debtor placed six advertisements in the daily e-newsletter of TWICE, a leading business-to-business publisher focused on the consumer electronics industry. The advertisements highlighted the opportunity to participate in the Auction. The Debtor also prepared a press release which detailed the Stalking Horse Bid and invited interested parties to participate. The press release was published by Warranty Week, a leading business-to-business

publisher in the warranty industry. Additionally, the Debtor emailed all parties that had shown interest prior to the announcement of the Stalking Horse Bid to provide notice of the Stalking Horse Bid and bidding process and to invite them to participate. Finally, the Debtor sent letters to thirty-four additional parties that the Debtor believed could be potential bidders to provide notice of the Stalking Horse Bid and bidding process and to invite them to participate

As a result of these communications, the Debtor had conversations with numerous interested parties and executed confidentiality agreements with four additional parties. Three parties (including Best Buy) conducted onsite due diligence of the Debtor's assets post-petition. In support of the due diligence efforts of the interested parties, Argus gathered, reviewed, and uploaded 257 documents to the online due diligence data room post-petition, in addition to the 134 documents that Argus uploaded pre-petition.

5. **Bids**

On March 20, 2011, Best Buy submitted a counter-bid in accordance with the requirements of the Sale Procedures Order. In this counter bid, Best Buy offered to purchase the same assets subject to the Stalking Horse Bid for $3,500,000. Because the Asset Purchase Agreement submitted by Best Buy varied from the Stalking Horse APA, the Debtor applied certain negative adjustments to Best Buy's offer when evaluating the bid. These negative adjustments, which totaled $305,000, are comprised of the following amounts: (a) $75,000 for a possible two month delay in distribution to creditors; (b) $30,000 for the removal of a $5,000 per month fee payable pursuant to the Transition Services Agreement that would be entered into in connection with the Stalking Horse APA; (c) $100,000 for closing risk related to the extension of the closing date beyond the date set forth in the Stalking Horse APA; and (d) $100,000 for the Break-Up Fee payable to the Stalking Horse Bidder. After applying these negative adjustments,

the Debtor valued the Best Buy offer at $3,195,000.  The adjusted Best Buy value of $3,195,000

exceeded the Stalking Horse bid by $320,000,[6] and was thus determined to be the "Starting Bid"

under the Sale Procedures.

### 6. Auction

Best Buy and ELDIS attended and participated in the Auction.  For the purpose of the

Auction, each Best Buy bid was discounted by a total of $305,000, as set forth above.  The

Stalking Horse Bidder made the first bid at the Auction, which bid exceeded the value of the

Starting Bid by $25,000.  The Auction proceeded and ultimately included over eighty

additional bids.  The final bid was Best Buy's offer of $6,405,000, which the Debtor adjusted to

$6,100,000 for the purpose of the Auction.  The Stalking Horse declined to continue bidding

after this bid.

### 7. Winning Bid

At the conclusion of the auction, the Debtor determined, in consultation with the

Committee, that Best Buy's final bid of $6,405,000 (adjusted to $6,100,000 for the purposes of

the Auction) was the "Successful Bid" under the Sale Procedures.

As part of the Successful Bid, Best Buy has agreed to pay the Debtor a $175,000

administrative fee in connection with the Best Buy Operating Lease (as defined below).  This

administrative fee would be refunded on a pro rata basis if the closing of the Sale or the

confirmation of a plan in this Chapter 11 Case occurs before September 30, 2011.  Best Buy has

the right to extend the deadline for closing or plan confirmation until October 31, 2011 by paying

the Debtor an additional $50,000 administrative fee.

The Debtor notes that perhaps the most unusual aspects of the Successful Bid and the

---

[6]  This amount complied with the Sale Procedures, which required pre-Auction counter-bids to exceed the Stalking Horse Bid by at least $50,000 (plus the amount of the Break-up Fee).

proposed Revised Proposed Sale Order is that both contemplate that the Debtor and Best Buy may decide, prior to the closing of the Sale, to co-sponsor a plan of reorganization in this Chapter 11 Case that permits Best Buy to acquire all of the stock in the reorganized Debtor as an alternative to purchasing the Assets. The Successful Bid, as accepted and reflected in the Revised Proposed Sale Order, requires Best Buy to be fully committed on a legal basis to purchase the Assets for the bid price if a plan that is as least as favorable to the Debtor's creditors is not confirmed by, at the latest, October 31, 2011. In the meantime, Best Buy will have posted a cash deposit equal to 50% of its bid price by March 31, 2011, and will assume the full risk and expense of operating the Debtor's business assets from April 1, 2011 forward. ( For the sake of comparison, the Stalking Horse Bid contemplated a similar transition/operating arrangement for the period after March 31, 2011.) It is the Debtor's hope, fully supported by the Committee, that this opportunity for resolution of this Chapter 11 Case through the confirmation of a plan co-sponsored by Best Buy will provide the highest and best treatment of claims, all without the expense or risk of operating losses and with the firm back-up in place of a committed asset sale locked in by the Auction and the entry of the Revised Proposed Sale Order.[7]

### a. Terms of Best Buy APA

In light of Best Buy's Successful Bid, the Debtor seeks to sell the Assets pursuant to the Best Buy APA. All capitalized terms used in this sub-section and not defined herein have the meanings ascribed to them in the Best Buy APA. The proposed material terms of the sale of the Assets pursuant to the Best Buy APA include the following:

---

[7] Of course, the Revised Proposed Sale Order shall not in any way constitute an order confirming any chapter 11 plan, as such confirmation is expressly contingent on the parties' compliance with all disclosure and confirmation requirements of the Bankruptcy Code and entry of a separate confirmation order by this Court in due course.

| | |
|---|---|
| **Assets to Be Acquired** | The Assets to be acquired by Best Buy will consist of substantially all assets of the Debtor's business as defined in Section 2.1 of the Best Buy APA, including the Debtor's intellectual property assets and certain physical assets, but excluding certain assets set forth in Section 2.2 of the Best Buy APA, which consist primarily of cash, accounts receivable, prepaid expenses and the Excluded Contracts. |
| **Potential Contracts to Be Assumed and Assigned to the Successful Bidder(s)** | Those executory contracts that are proposed to be assigned to Best Buy pursuant to Section 365 of the Bankruptcy Code, if any, will be set forth on Schedule 2.1(a) to the Best Buy APA (as such Schedule may be modified to add or delete executory contracts or unexpired leases at any time prior to Closing) (the "Assumed Contracts"). See Best Buy APA, §§ 2.1(a) & 2.7. |
| **Deposit, Good Faith Deposit, Liquidated Damages and Specific Performance** | The Best Buy APA provides that 50% of the cash purchase price will be placed in an escrow account on March 31, 2011. See Best Buy APA, § 2.8.<br><br>The Best Buy APA provides that Best Buy's good faith deposit of Three Hundred Thousand Dollars ($300,000) will be forfeited if the Best Buy APA is terminated in accordance with the Best Buy APA and Best Buy is in material breach of the Best Buy APA at the time of termination. See Best Buy APA, § 9.2.<br><br>The Best Buy APA provides that if the Best Buy APA is terminated in accordance with the Best Buy APA as a result of the Debtor being in material breach of the Best Buy APA, the Debtor is required to pay Three Hundred Thousand Dollars ($300,000) to Best Buy as liquidated damages. See Best Buy APA, § 9.5(a).<br><br>The Best Buy APA provides that if the transaction contemplated by the Best Buy APA does not close by October 31, 2011 due to a material breach of the Best Buy APA by Best Buy, Best Buy is required to pay, as liquidated damages, 1% of the Cash Purchase Price for each month following October 31, 2011 during which the transaction does not close. See Best Buy APA, § 9.5(b). |

| | In the event of a breach by either party, the other party has the right to require specific performance. <u>See</u> Best Buy APA, §9.4(c). |
|---|---|
| **Closing** | The Closing of the Sale will be subject to closing conditions typical and customary to a transaction of this kind. The Closing must occur by October 31, 2011. <u>See</u> Best Buy APA, Article VII. |

<b>b.    <u>Extraordinary Provisions Under Best Buy Transaction Agreements</u></b>

The Debtor contends that the following provisions of the Best Buy Transaction Agreements may constitute "Extraordinary Provisions" under the Amended Guidelines for the Conduct of Asset Sales established and adopted by the United States Bankruptcy Court for the Southern District of New York pursuant to General Order M-383:

a. <u>Tax Exemption</u>. In the Best Buy APA, the Debtor is seeking to have the sale exempt from transfer tax, stamp tax or any similar tax relating to the sale and transfer of the Debtor's property pursuant to Section 1146(a) of the Bankruptcy Code, if any such taxes would otherwise be payable under the laws of New York and/or New Jersey. <u>See</u> Best Buy APA § 7.4.

b. <u>Post-Closing Operating Lease.</u> Pursuant to the Best Buy APA, Best Buy and the Debtor will enter into an operating lease (in the form attached as <u>Exhibit D</u> to the Best Buy APA, the "<u>Best Buy Operating Lease</u>"). The Best Buy Operating Lease provides that Best Buy will assume the operation, maintenance, risk of loss, injury and cost of the Debtor's business, including, but not limited to the use of certain non-residential property located at 204 Enterprise Drive, Kingston, NY 12401, the use of certain space used to house the Debtor's telecommunication's equipment located at Cedar Knolls I, Data Center & Corporate Office, 9 Wing Drive, Cedar Knolls, NJ 07927, certain services provides by the Debtor's employees, telecommunications services, internet services, electricity, water and heating, ventilating and air conditioning, all as specified in the Best Buy Operating Lease for an initial term beginning on March 31, 2011 and ending on September 30, 2011, as such term may be extended pursuant to the terms of the Best Buy Operating Lease. Best Buy shall pay the Debtor certain fees as specified in the Best Buy Operating Lease. The Debtor believes these provisions are typical and customary for transactions of this kind. <u>See</u> Best Buy APA, § 7.2(b)(ii) & <u>Exhibit D</u> to the Best Buy APA.

c. <u>Record Retention</u>. The Debtor will have access to its books and records sufficient to administer the bankruptcy estate. <u>See</u> Best Buy APA, § 5.4.

d. <u>No Successor Liability</u>. Best Buy required that the Sale Order include certain findings that the Purchased Assets are being sold free of successor or other similar liability as part of its offer to purchase the Purchased Assets and enter into the Best Buy APA. <u>See</u> Best Buy APA, § 8.1. In light of the marketing of this transaction, sufficient notice of the Sale (which includes a disclosure regarding the successor liability findings in the Sale Order) to parties in interest and the non-voluminous nature of such findings, the Debtor believe the inclusion of the same in the Sale Order is appropriate and reasonable when balanced against the Sale benefits.

e. <u>Relief from Bankruptcy Rule 6004(h)</u>. The Sale Order provides for a waiver of the 14-day stay of the Sale Order, including the parties' ability to close the Sale and assign the Assumed Contracts in connection therewith, arising under Bankruptcy Rules 6004(h) and 6006(d), respectively. <u>See</u> Sale Order at ¶ 32. The Court may grant this request if it "orders otherwise." <u>See</u>, <u>e.g.</u>, Fed. R. Bankr. P. 6004(h) and 6006(d). Here, the Sale was extensively marketed and notice of the Sale was adequately provided to all parties in interest. Thus, the Debtor respectfully submits that there are adequate grounds for the Court to "order otherwise" so the Sale Order is effective immediately.

## ARGUMENT

### THE REVISED PROPOSED SALE ORDER SHOULD BE GRANTED ON THE TERMS PROPOSED.

Section 363(b)(1) of the Bankruptcy Code provides that a trustee or debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A sale should be approved pursuant to Section 363(b) of the Bankruptcy Code if it represents a reasonable business judgment by the debtor. *See, e.g., Parker v. Motors Liquidation Company (In re Motors Liquidation Co.),* 430 B.R. 65, 83 (S.D.N.Y. 2010) ("The overriding consideration for approval of a Section 363 sale is whether a 'good business reason' has been articulated.") *(citing In re Chrysler LLC,* 576 F.3d 108, 111 (2d Cir. 2009), *judgment vacated for unrelated reasons by Indiana State Police Pension Trust v.*

*Chrysler LLC,* 130 S. Ct. 1015 (2009) and *In re Chrysler, LLC,* 592 F.3d 370 (2d Cir. 2010)); *In re Iridium Operating LLC,* 478 F.3d 452, 466 (2d Cir. 2007).

As set forth below, the Debtor believes that the proposed sale price under the Best Buy APA is fair and reasonable, and represents the highest obtainable price under the circumstances.

## A.    The Sale is a Product of the Debtor's Reasonable Business Judgment

The Debtor's determination to proceed with the Sale is amply supported by the record, including the fact that the Auction resulting in a Successful Bid that more than doubled the value of the Stalking Horse Bid. The showing of a legitimate business justification for a sale gives rise to a presumption that the Debtor's decision was made "on an informed basis, in good faith and in the honest belief that the action was taken in the best interests of the company." *In re Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed,* 3 F.3d 49 (2d Cir. 1993). As courts in this District have stated, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. Of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

The Debtor's business reasons for proposing the Sale include, among others: (a) the Assets should be sold promptly to preserve value for the estate; (b) Best Buy's bid was the "highest and best" bid for the Assets sold at the Auction, and, in fact, exceeded parties' expectations; (c) the price obtained is such that it appears that the Debtor will be in a position make distributions to unsecured creditors in a substantially greater amount than what was expected at the commencement of the Chapter 11 Case; (d) the sale process itself was conducted in good faith at all times; and (e) the Debtor obtained "fair value" for the Assets. As such, the

Debtor's business judgment satisfies the standards for approval under Section 363 of the Bankruptcy Code.

### 1. The Assets Should be Sold Promptly To Preserve Value for the Estate

A good business reason for the sale of a debtor's assets outside the ordinary course of business may be found where the sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. *See, e.g., In re Chrysler, LLC,* 405 B.R. 84, 96 (Bankr. S.D.N.Y. 2009) ("A debtor may sell substantially all of its assets as a going concern and later submit a plan of liquidation providing for the distribution of the proceeds of the sale . . . . This strategy is employed, for example, when there is a need to preserve the going concern value . . ."); *In re General Motors Corp.,* 407 B.R. 463 (Bankr. S.D.N.Y. 2009), *aff'd Parker v. Motors Liquidation Co.,* 430 B.R. 65 (same). That is clearly the case here, given the continuing financial constraints on the Debtor's business, the costs of administering and preserving the Debtor's assets and the Debtor's corresponding need to consummate a sale as expeditiously as possible.

The Debtor believes that, unless it is able to promptly effectuate the Sale, the value of the Assets and the business will continue to decline. In addition, prolonged chapter 11 proceedings would likely lead to the end of the Debtor's operations. Consummation of the Sale, as proposed herein, is necessary to reach a successful result.

### 2. Best Buy's Prevailing Bid Was "Highest" and "Best"

The objective of an auction in bankruptcy is to obtain the "highest and best" price for the assets, thus maximizing the proceeds to the estate and, indirectly, the seller's creditors. *See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.),* 107 F.3d 558 (8th Cir. 1997); *Official Committee of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992), *aff'd,* 147 B.R. 650 (S.D.N.Y. 1992) ("When a

debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold."). Courts generally defer to a debtor's business judgment in determining what constitutes the superior offer, and that decision should not be disturbed unless the debtor abused its discretion. *See In re Castre, Inc.,* 312 B.R. 426 (Bankr. D. Colo. 2004) ("[T]he trustee or DIP is entitled to great judicial deference in deciding which bid to accept as the best and highest bid on the sale of the Debtor's assets; and, although the trustee's or DIP's discretion is not without limit, the Court should not step in and assume a role and responsibility properly placed by the Code in another's hands.").

In the present case, the Successful Bid of $6,405,000, which for the purposes of the Auction, the Debtor valued at $6,100,000, was both the "highest" and "best" bid for the Assets. The next highest bid, submitted by the Stalking Horse Bidder, was $6,025,000.

### 3. The Proposed Sale Will Maximize the Debtor's Ability to Pay Claims

The proposed Sale will serve the paramount goal of maximizing the proceeds received by the Debtor's estate. The proceeds from the proposed Sale will enable the Debtor to pay creditors' claims to a much greater extent than was originally contemplated at the commencement of the Chapter 11 Case. The value of the Stalking Horse Bid was $2,875,000, which amount set the expectations for creditors' recoveries prior to the Auction. If the Sale is approved and the value of $6,405,000 (which for the purposes of the Auction, the Debtor valued at $6,100,000) from the Successful Bid is realized, the Debtor will be in position to pay creditors' claims to a much greater extent than previously contemplated.

### 4. The Sale is the Product of Good Faith, Arm's Length Negotiations

The process that produced the Successful Bid demonstrates that the proposed Sale falls within the Debtor's sound business judgment. As detailed in the Bloom Declaration, the process

that culminated in the Auction began prior to the Petition Date and included lengthy negotiations regarding a potential stalking horse bid, bidding procedures and other matters critical to this Chapter 11 Case. Those negotiations, the manner in which the Debtor conducted the process, and the results via competitive bidding achieved establish that the entire process was the product of arm's length negotiations among the Debtor, Best Buy, the Stalking Horse Bidder, and various other parties in interest. Those negotiations were conducted by the Debtor and its advisors at all times in good faith.

Throughout the marketing and sale process, the Debtor and its professionals have taken all steps necessary to maximize value, and all interested parties have had full opportunity to submit bids and participate in the Auction. Based on that process alone, the proposed Sale satisfies the business judgment test. *See In re Loral Space & Com. Ltd., et al.,* Case No. 03-41710 (RRD), transcript at 318-19 (Bankr. S.D.N.Y. Oct. 24, 2003) ("if process, itself, was pursued with due care and good faith on arm's length basis, the Court is loathe to intervene and second guess the [d]ebtor's business judgment") (citing *In re Global Crossing Ltd.* 295 B.R. 726, 744 (Bankr. S.D.N.Y. 2003)).

5. **Under the Terms of the Proposed Sale, the Debtor's Estate Will Receive Fair Value**

At closing, the Debtor will transfer all of the Assets to Best Buy, in exchange for consideration totaling $6,405,000 (which, for the purposes of the Auction, the Debtor valued at $6,100,000) – substantial value that will be used to, *inter alia*, make distributions to unsecured creditors. Should the Sale not be approved, or fail to close, the Debtor believes that there will be little value to distribute to creditors. Certainly, the liquidation value of the Assets is substantially less than the proceeds to be realized from the Sale. For this reason alone, the Debtor is receiving fair value.

Moreover, the Debtor utilized an auction process approved by this Court, which demonstrates that the Sale achieves fair market value for the Assets. *In re Fitzgerald*, 428 B.R. 872, 883 (B.A.P. 9th Cir. 2010) ("The price achieved by an auction is ordinarily assumed to approximate market value when there is competition by an appropriate number of bidders.") (citing *Simantob v. Claims Prosecutor, LLC. (In re Lahijam)*, 325 B.R. 282, 287 (B.A.P. 9th Cir 2005)); *In re Transworld Airlines, Inc.*, 2001 WL 1820326, at*12 (Bankr. D. Del. Apr. 2, 2001) ("[t]he value generated through the Court approved auction process reflects the market value of [the debtors'] assets . . .").

## B. The Sale Of The Debtor's Assets Free And Clear Of Liens Is Authorized By Section 363(f) Of The Bankruptcy Code

In certain enumerated situations, Section 363(f) of the Bankruptcy Code permits a debtor to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such liens, claims, interests, charges and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).[8] In this case, there are no liens recorded or asserted against the Assets, as reflected in the UCC-1 filings with the New York Secretary of State. Thus, section 363(f) is plainly satisfied.

Moreover, as many courts recognize, where – as here – no entity has objected to a sale,

---

[8] Pursuant to section 363(f) of the Bankruptcy Code, the Debtor may sell its assets free and clear of any entity's interest if ***any one of*** the following conditions is satisfied:

    (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
    (2)    such entity consents;
    (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
    (4)    such interest is in bona fide dispute; or
    (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

consent may be implied for purposes of section 363(f)(2).[9]  Courts in this District have applied the same principle. *See, e.g., In re Enron Corp.,* No. 01- 16034 (AJG), 2004 WL 5361245, at *2 (Bankr. S.D.N.Y. Feb. 5, 2004); *In re WestPoint Stevens, Inc.,* No. 03-13532 (RDD), Notice of Sale Hearing at 190:6-194:16, (Bankr. S.D.N.Y. June 29, 2005) ("I find that by their absence of objection, all other lenders who have been on notice of this sale have consented."), *rev 'd on other grounds* 333 B.R. 30 (S.D.N.Y. 2005).  In light of these authorities, any party in interest in the Chapter 11 Case who has failed to object to the proposed Sale should be deemed to have consented to the sale of the Debtor's assets "free and clear" pursuant to section 363(f)(2) of the Bankruptcy Code.

## C.   Assumption and Assignment of the Assumed Contracts Should be Approved.

Pursuant to Section 365(a) of the Bankruptcy Code, a debtor "subject to the court's approval may assume or reject any executory contract or unexpired lease of the debtor." See 11 U.S.C. § 365(a).  The assumption of any executory contract or unexpired lease is subject to the Court's approval.  Courts require debtors to demonstrate that they exercised their sound business judgment in deciding whether to assume such executory contracts and unexpired leases pursuant to a sale. *See Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.),* 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d

---

[9]  *See, e.g., FutureSource LLC v. Reuters Ltd.,* 312 F.3d 281, 285 (7th Cir. 2002) (in context of section 363(f), "lack of objection (provided of course there is notice) counts as consent"); *In re James,* 203 B.R. 449, 453 (Bankr. W.D. Mo. 1997) section 363(f)(2) satisfied where secured creditor failed to object to proposed sale and thus "implicitly conveyed its consent to the sale"); *In re Tabone, Inc.,* 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (because of tax lien holder's failure to object to sale, it "may be deemed to have consented to the sale for purposes of section 363(f)(2)"); *In re Elliot,* 94 B.R. 343, 345-46 (E.D. Pa. 1988) (implied consent sufficient to authorize section 363(f)(2) sale; consent implied from non-debtor that "received notice of the proposed sale and also admits that it did not file any timely objection."); *In re Gabel,* 61 B.R. 661, 664-65 (Bankr. W.D. La. 1985) (estopping secured creditor that was properly noticed and failed to object from denying its implied consent to sale of property under 363(f)).

1095, 1099 (2d Cir. 1993).

In addition to the requirement that the Debtor exercised sound business judgment, pursuant to Section 365(b), in situations where there has been a default on an executory contract or unexpired lease, a debtor is not permitted to assume such contract or lease unless and until it: (a) cures or provides adequate assurance that the Debtor will promptly cure; (b) compensates, or provides adequate assurance that the Debtor will promptly compensate a party to the contract or lease for any pecuniary loss arising from the Debtor's default; and (c) provides adequate assurance or future performance under the contract or lease. See 11 U.S.C. § 365(b).

Here, the assumption of the Assumed Contracts is a crucial part of the Sale and, the Court should approve the Debtor's decision to assume the Assumed Contracts, as a sound exercise of its business judgment. Any Assumed Contracts will be ones which are identified by Best Buy as necessary to run the Debtor's business; as such, they are essential to inducing the best offer for the Purchased Assets and the assumption of such contracts increases the likelihood of generating more interest for the Sale. Under the Best Buy APA, Best Buy is required to provide reasonable adequate assurances as required under the Bankruptcy Code with respect to any Assumed Contracts and pay any cure costs due thereunder. Furthermore, the Assumed Contracts will be assumed though the process approved by the Court by the Assumption Procedures contained in the Sale Procedures Order and, thus, will likely have been reviewed by key constituents. Therefore, the assumption of the Assumed Contracts by way of the Assumption Procedures should be approved as an exercise of business judgment.

Moreover, in accordance with the Sale Procedures Order, all counterparties will be provided with notice of the proposed assumption and assignment and will have adequate time and opportunity to object to the assumption or proposed cure amount or otherwise be heard with

respect thereto.

**D.**     <u>**The Proposed Sale Does Not Violate Section 363(n) Of The Bankruptcy Code**</u>

Section 363(n) of the Bankruptcy Code allows a trustee to avoid a section 363 sale if the price was controlled by an agreement among potential bidders. *See* 11 U.S.C. § 363(n); *Birdsell v. Fort McDowell Sand & Gravel (In re Sanner),* 218 B.R. 941, 944-945 (Bankr. D. Ariz. 1998) (articulating the elements of Section 363(n) as follows: "(1) there must be an agreement; (2) between potential bidders; (3) that controlled the price at bidding.").

The record before the Court compels a finding that the proposed sale did not violate section 363(n) of the Bankruptcy Code. Best Buy and ELDIS bid against one another until Best Buy emerged as the Successful Bidder. There is no evidence of any collusive bidding, nor has any party raised any such evidence. Thus, the proposed Sale to Best Buy does not violate section 363(n) of the Bankruptcy Code.

<u>**CONCLUSION.**</u>

On the basis considerations set forth herein and in the Sale Motion, in addition to the reasonable procedural guidelines and protections enacted by the Debtor in accordance with the Sale Procedures Order, the Court should grant the Revised Proposed Sale Order as proposed herein.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order, in substantially the same form as the Revised Proposed Sale Order submitted herewith, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

Dated: March 23, 2011

**BROWN RUDNICK LLP**

 /s/ William R. Baldiga
William R. Baldiga, Esq.
Nina E. Andersson, Esq.
Caleb B. Piron, Esq.
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to the Debtor and Debtor-in-Possession*

# EXHIBIT A

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PARTSEARCH TECHNOLOGIES, INC.,[1] | ) Case No. 11-10282 (MG) |
| | ) |
| Debtor | ) |
| | ) |

## ORDER AUTHORIZING AND APPROVING (A) PROPOSED SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (B) ENTRY INTO AND PERFORMANCE UNDER THE BEST BUY ASSET PURCHASE AGREEMENT AND RELATED AGREEMENTS, (C) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, AND (D) RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtor and debtor-in-possession (the "Debtor") seeking entry of an order, pursuant to Sections 105(a), 363, 365, 503 and 507 of the United States Bankruptcy Code (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing and approving the following:

(a)     the sale of substantially all of the assets of the Debtor (the "Sale");

(b)     the entry into, performance under and terms and conditions of the Asset Purchase Agreement dated as of January 27, 2011, annexed as Exhibit D to the Motion (collectively with all related agreements (including, without limitation, any related transition services agreements and/or escrow agreements), documents or instruments and all exhibits, schedules and addenda to any of the foregoing, the "APA"), whereby the Debtor has agreed to sell, and ELDIS, Inc. has agreed to buy, substantially all of the Debtor's assets, free and clear of all Claims (as defined below), Liens (defined below), liabilities, rights, interests and encumbrances except where the Debtor has agreed to transfer and the Purchaser has expressly agreed to assume certain of the Debtor's liabilities (collectively,

---

[1]     The last four digits of the Debtor's taxpayer identification number are: 5335. Partsearch Technologies, Inc. is a Delaware corporation qualified to do business in the State of New York.

[2]     Capitalized terms used but not defined shall have the meanings ascribed to them in the Motion, the APA or the Sale Procedures, as applicable. In the event of any conflict in defined terms, the meaning ascribed to the defined terms in the APA shall govern.

and including all actions taken or required to be taken in connection with the implementation and consummation of the APA, the "Transactions");

(c)     the assumption and assignment to the Purchaser of certain executory contracts of the Debtor designated by the Purchaser for assumption and assignment as Assumed Contracts in accordance with this Order, the Sale Procedures Order (defined below) and the APA (collectively, the "Assumed Contracts"); and

(d)     other related relief;

and upon consideration of the alternative transaction (the "Alternative Transaction") proposed by Best Buy Co., Inc. ("Best Buy"), as set forth in Best Buy's bid term sheet, including the preparation, promotion, prosecution and consummation of a plan co-sponsored by the Debtor and Best Buy (as to which the parties shall use their commercially reasonable, good faith best efforts) and that certain asset purchase agreement between Best Buy and the Debtor (together with all exhibits thereto, including the related agreements attached as exhibits (including, without limitation, any related operating leases and/or escrow agreements), related documents or instruments and all exhibits, schedules and addenda to any of the foregoing, collectively, the "Best Buy APA")), and upon the *Debtor's Report and Memorandum of Law in Support of Sale of Substantially all of Debtor's Assets* [Docket No. ___] (together with the Declaration of Lawton W. Bloom filed in connection therewith [Docket No. ___], collectively, the "Sale Report and Memorandum") designating Best Buy as the Successful Bidder at the Auction (such Best Buy APA, together with the transactions set forth therein, are hereinafter defined as the "Best Buy Transactions"); and the Court having entered an order approving the sale procedures and granting certain related relief on February 14, 2011 [Docket No. 39] (the "Sale Procedures Order"); and an auction conducted in accordance with the Sale Procedures Order (the "Auction") having been held on March 22, 2011 pursuant to the Sale Procedures Order; and Best Buy having submitted the highest or otherwise best offer at the Auction; and the Court having conducted a hearing on the Motion on March 25, 2011 (the "Sale Hearing") at which time all

2

interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the Best Buy APA and the Sale Procedures Order and all objections to the Best Buy Transactions and the APA filed in accordance with the Sale Procedures Order; and upon the record of the Sale Hearing, and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and upon all of the proceedings had before the Court, and all objections and responses to the relief requested in the Motion having been heard and overruled or resolved on the terms set forth in this Order, and it appearing that due notice of the Motion, the APA, the Sale Procedures Order and the Auction has been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its stakeholders and all other parties-in-interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon, IT IS HEREBY FOUND THAT:

## I.     Jurisdiction, Venue and Final Order

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

## II. Notice of the Best Buy Transactions, APA, Sale Hearing, Auction and the Cure Costs

4. As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing, the APA and the Best Buy Transactions has been provided in accordance with Sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtor has complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing, the APA and the Best Buy Transactions as required by the Sale Procedures Order. The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the APA or the Best Buy Transactions is required for the entry of this Order.

5. A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

6. In accordance with the Sale Procedures Order, the Debtor has served a notice of its intent to assume and assign the Assumed Contracts, if any, and of the Cure Costs upon each non-Debtor counterparty to an Assumed Contract. The service and provision of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Assumed Contracts or establishing a Cure Cost for the respective Assumed Contracts. Non-Debtor counterparties to the Assumed Contracts have had an adequate opportunity to object to assumption and assignment of the applicable Assumed Contracts and the Cure Costs set forth in the notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, a purchaser for purposes of Section 365(c)(1) of the Bankruptcy Code).

4

### III.    Highest or Otherwise Best Offer

7.      As demonstrated by the Sale Report and Memorandum, the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtor conducted an Auction process in accordance with, and has otherwise complied in all respects with, the Sale Procedures Order. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and the Auction process set forth in the Sale Procedures Order afforded a full, fair and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase assets and assume liabilities of the Debtor.

8.      The Included Assets (as defined in the Best Buy APA) were adequately marketed by the Debtor, and the consideration provided by Best Buy under the Best Buy APA constitutes the highest or otherwise best offer and provides fair and reasonable consideration to the Debtor for the sale of all Included Assets and the assumption of all Assumed Liabilities (as defined in the Best Buy APA).

9.      Approval of the Motion and the Best Buy APA and the consummation of the Best Buy Transactions contemplated thereby are in the best interests of the Debtor, its creditors, estate and other parties in interest. The Debtor has demonstrated good, sufficient and sound business reasons and justifications for entering into the Best Buy Transactions and the performance of its obligations under the Best Buy APA.

10.     Entry of an order approving the Best Buy APA and all the provisions thereof is a necessary condition precedent to Best Buy's consummation of the Best Buy Transactions.

11.     The Best Buy APA was not entered into, and neither the Debtor nor Best Buy have entered into the Best Buy APA or propose to consummate the Best Buy Transactions, for the purpose of hindering, delaying or defrauding the Debtor's present or future creditors. Neither

the Debtor nor Best Buy is entering into the Best Buy APA, or proposing to consummate the Best Buy Transactions, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

12.     The offer of Best Buy, upon the terms and conditions set forth in the Best Buy APA, including the form and total consideration to be realized by the Debtor pursuant to the Best Buy APA: (i) is the highest and/or best offer received by the Debtor; (ii) is fair and reasonable; (iii) is in the best interests of the Debtor's creditors and estate, and (iv) constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Included Assets. The value of the Included Assets is maximized by a sale in one lot, as contemplated by the Best Buy APA, as opposed to piecemeal sales.

13.     Best Buy is the Successful Bidder for the Included Assets in accordance with the Sale Procedures Order. Best Buy has complied in all respects with the Sale Procedures Order and any other applicable order of this Court in negotiating and entering into the Best Buy APA, and the Best Buy APA likewise complies with the Sale Procedures Order and any other applicable order of this Court.

## IV.     Good Faith of the Debtor and Best Buy

14.     The sales process conducted by the Debtor, including without limitation, the Sale Procedures set forth in the Sale Procedures Order, was at arms' length, non-collusive, in good faith, and substantively and procedurally fair to all parties.

15.     The Debtor and its professionals have complied, in good faith, in all respects with the Sale Procedures Order. As demonstrated by (i) the Sale Report and Memorandum, (ii) any

testimony and other evidence proffered or adduced at the Sale Hearing and/or (iii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted prior to the Petition Date as well as in accordance with the Sale Procedures Order, the Debtor (a) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Debtor's assets; (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Included Assets; and (c) considered any bids submitted on or before the Bid Deadline.

16.     The Best Buy APA and the Best Buy Transactions contemplated thereunder were proposed, negotiated and entered into by and among the Debtor and Best Buy without collusion, in good faith and at arms' length.  Neither the Debtor nor Best Buy has engaged in any conduct that would cause or permit the Best Buy APA or the Best Buy Transactions to be avoided or impose any costs or damages under Section 363(n) of the Bankruptcy Code.  Specifically, Best Buy has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement by the bidders.

17.     Neither Best Buy nor any of its respective affiliates, present or contemplated members, officers, directors, shareholders or any of their respective successors and assigns is an "insider" of the Debtor, as that term is defined in Section 101(31) of the Bankruptcy Code.  Best Buy is entering into the Best Buy Transactions in good faith and is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding.

## V.     **Section 363 is Satisfied**

18.     The Debtor has demonstrated a sufficient basis and compelling circumstances requiring it to (i) enter into the Best Buy APA, (ii) sell the Included Assets and (iii) assume and assign the Assumed Contracts, if any, and such actions are appropriate exercises of the Debtor's business judgment and in the best interests of the Debtor, its estate and its creditors. Such business reasons include, but are not limited to, the fact that (i) the Best Buy APA constitutes the highest or otherwise best offer for the Included Assets; (ii) the Best Buy APA presents the best opportunity to realize the value of the Debtor on a going concern basis and avoid any potential decline and devaluation of the Debtor's business; and (iii) unless the sale is concluded expeditiously pursuant to the Best Buy APA, recoveries of creditors may be diminished.

19.     The Debtor has, to the extent necessary, satisfied the requirements of Bankruptcy Code Sections 363(b)(1). Accordingly, appointment of a consumer privacy ombudsman pursuant to Bankruptcy Code Sections 363(b)(1) or 332 is not required with respect to the relief requested in the Sale Motion.

20.     The Included Assets constitute property of the Debtor's estate and title thereto is presently vested in the Debtor's estate within the meaning of Bankruptcy Code section 541(a).

21.     The sale of all Included Assets to Best Buy under the terms of the Best Buy APA meets the applicable provisions of Section 363(f) of the Bankruptcy Code such that the sale of the Included Assets will, except as expressly provided in the Best Buy APA with respect to the Assumed Liabilities, be sold free and clear of any and all Claims, Liens, liabilities, rights, interests and encumbrances whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability). Without limiting the foregoing, the (i) transfer of the Included Assets to Best Buy and (ii) assumption and assignment to Best Buy of the Assumed Contracts, if any, will be free and clear of all Claims, Liens, liabilities, rights,

interests and encumbrances whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability), and will not subject Best Buy or any of Best Buy's assets to any liability for any Claims, Liens, liabilities, rights, interests and encumbrances whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability) other than the Assumed Liabilities. All holders of Claims, Liens, liabilities, rights, interests and encumbrances who did not object, or withdrew their objections to the Best Buy Transactions, are deemed to have consented to the Best Buy Transactions pursuant to Section 363(f)(2) of the Bankruptcy Code, and all holders of Claims, Liens, liabilities, rights, interests and encumbrances are adequately protected — thus satisfying Section 363(e) of the Bankruptcy Code — by having their Claims, Liens, liabilities, rights, interests and encumbrances, if any, attach to the proceeds of the Alternative Transaction ultimately attributable to the property against or in which they assert a Claim, Lien, liability, right, interest and encumbrance, or other specifically dedicated funds of the Debtor, in the same order of priority and with the same validity, force and effect that such Claim, Lien, liability, right, interest and encumbrance holder had prior to the Best Buy Transactions, subject to any rights, claims and defenses of the Debtor or its estate, as applicable, or as otherwise provided herein.

22.     Best Buy would not have entered into the Best Buy APA and would not consummate the sale of all Included Assets, thus adversely affecting the Debtor, its estate, creditors, employees and other parties in interest, if the sale of the Included Assets was not free and clear of all Claims, Liens, liabilities, rights, interests and encumbrances whatsoever, or if Best Buy could be liable for any Claims, Liens, liabilities, rights, interests and encumbrances whatsoever, including, without limitation and as applicable, the liabilities that expressly are not

assumed by Best Buy as set forth in the Best Buy APA or in this Order. Best Buy asserts that it will not consummate the Best Buy Transactions unless the Best Buy APA specifically provides and this Court specifically orders that none of Best Buy nor any of its affiliates, members, officers, directors, shareholders, their assets or the Included Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Claim, Lien, liability, right, interest and encumbrance whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability) of the Debtor and its predecessors, affiliates and/or subsidiaries, other than with respect to the Assumed Liabilities. Specifically, and without limiting any of the foregoing, Best Buy shall not be liable for any amounts owed pursuant to WARN (as defined below).

23. The transfer of the Included Assets to Best Buy under the Best Buy APA will be a legal, valid and effective transfer of all of the legal, equitable and beneficial right, title and interest in and to the Included Assets free and clear of all Claims, Liens, liabilities, rights, interests and encumbrances whatsoever. The Debtor may sell its interest in the Included Assets free and clear of all Claims, Liens, liabilities, rights, interests and encumbrances whatsoever, because, in each case, one or more of the standards set forth in Section 363(f) has been satisfied. The transfer of the Included Assets to Best Buy will vest Best Buy with good and marketable title to the Included Assets.

24. Best Buy is not a continuation of the Debtor or its estate and there is no continuity between Best Buy and the Debtor. Best Buy is not holding itself out to the public as a continuation of the Debtor or its estate and the Best Buy Transactions do not amount to a consolidation, merger or de facto merger of Best Buy and the Debtor.

## VI. **Assumption and Assignment of the Assumed Contracts**

25.     The assumption and assignment of the Assumed Contracts (as such Assumed Contracts may be amended, supplemented or otherwise modified prior to assumption and assignment without further order of the Court with the consent of the Debtor, the contract counterparty and Best Buy), if any, that are designated for assumption and assignment pursuant to the terms of this Order and the Best Buy APA are integral to the Best Buy APA, are in the best interests of the Debtor and its estate, creditors and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtor. No section of any Assumed Contract which purports to prohibit, restrict, or condition the use, consideration or assignment of any such Assumed Contract in connection with the Best Buy Transactions shall have any force or effect.

26.     The Debtor has met all requirements of Section 365(b) of the Bankruptcy Code for each of the Assumed Contracts. The Debtor and/or Best Buy, as applicable under the Best Buy APA, have (a) cured and/or provided adequate assurance of cure of any default existing prior to the closing of the Sale (the "Closing") under all of the Assumed Contracts, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code; and (b) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing under any of the Assumed Contracts, within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code. Each of the Assumed Contracts shall be assigned to Best Buy free and clear of all Claims, Liens, liabilities, rights, interests and encumbrances whatsoever, against Best Buy.

27.     Best Buy has demonstrated adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of Sections 365(b)(1)(C) and 365(f)(2)(B) of

the Bankruptcy Code. Pursuant to Section 365(f) of the Bankruptcy Code, the Assumed Contracts to be assumed and assigned under the Best Buy APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, Best Buy notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

28.     No defaults exist in the Debtor's performance under the Assumed Contracts as of the date of this Sale Order other than the failure to pay amounts equal to the Cure Costs or defaults that are not required to be cured as contemplated in Section 365(b)(1)(A) of the Bankruptcy Code.

29.     Upon entry of this Order, the Debtor shall, consistent with its agreement with Best Buy, use its best efforts to obtain promptly this Court's approval of the Debtor's assumption of that certain prepetition settlement agreement (the "Agreement"), dated December 3, 2010, entered into by and between the Debtor and Best Buy, and     the Creditors' Committee has agreed to support the Debtor's request for approval of the assumption. In the event of a chapter 11 plan co-sponsored by the Debtor and Best Buy, however, such Agreement may be modified and incorporated into such plan. Any such modifications will not materially affect the benefits to the Debtor's estate or unsecured creditors, other than Best Buy, as set forth in the Agreement.

30.     As detailed herein, the Debtor has complied in all respects with General Order M-383 of the United States Bankruptcy Court for the Southern District of New York, dated November 18, 2009, establishing guidelines for the conduct of asset sales.

31.     The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

32.     There is no legal or equitable reason to delay the Best Buy Transactions.  Cause exists to waive the automatic fourteen (14) day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).

33.     This Order does not constitute an order confirming any chapter 11 plan.  If the Best Buy Transactions proceed in the form of a chapter 11 plan, the Court will consider such plan in due course in accordance with the Bankruptcy Code and, if and when appropriate, confirm such plan by separate order (which order shall provide for the termination of the Best Buy APA).

**IT IS HEREBY ORDERED THAT:**

### I.      General Provisions

1.      The Motion is granted in its entirety and approved in all respects to the extent set forth herein.

2.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court or by stipulation filed with the Court or as resolved in this Order, and all reservations of rights included therein, are, except as provided in other orders of the Court, hereby overruled on the merits with prejudice.  All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein, including, without limitation, all non-debtor parties to the Assumed Contracts.

3.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of

fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## II.     Approval of the Best Buy APA

4.      The Best Buy APA, all of the terms and conditions thereof, and all of the Best Buy Transactions contemplated therein are approved in all respects and incorporated herein by reference. The failure specifically to include any particular provision of the Best Buy APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Best Buy APA be authorized and approved in its entirety. The transfer of the Included Assets by the Debtor to Best Buy shall be a legal, valid, enforceable, and effective transfer of the Included Assets. The closing of the Best Buy Transactions are hereby approved and authorized under Section 363(b) of the Bankruptcy Code.

5.      The Debtor is authorized and, to the extent not already done, directed to (a) take any and all actions necessary or appropriate to perform, consummate, implement and close the Best Buy Transactions, including the sale to Best Buy of all Included Assets, in accordance with the terms and conditions set forth in the Best Buy APA and this Order, including without limitation executing, acknowledging and delivering such corporate name change certificates, deeds, assignments, conveyances and other assurance, documents and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and confirming to Best Buy, or reducing to possession, any or all of the Included Assets and (b) to assume and assign any and all Assumed Contracts. The Debtor is further authorized to pay, whether before, at or after the Closing, any expenses or costs that are required to be paid in order to consummate the Best Buy Transactions or perform their obligations under the Best Buy APA.

6. All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtor to transfer the Included Assets to Best Buy in accordance with the Best Buy APA and this Order.

7. The Debtor is transferring its interest in telephone numbers, fax numbers, or related data lines owned and operated by utility companies ("Utility Companies") to Best Buy pursuant to the Best Buy APA and Schedule 2.1(i). The Utility Companies are hereby directed to facilitate the transfer to Best Buy without charge. Notwithstanding the foregoing, Best Buy shall not assume any obligations arising out of the Seller's contracts with the Utility Companies.

8. All amounts, if any, to be paid by the Debtor to Best Buy pursuant to the Best Buy APA, including, without limitation, any allowed claims for breach thereof shall (a) constitute allowed administrative expenses of the estates pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code, (b) be protected as provided in the Best Buy APA, (c) not be altered, amended, discharged or affected by any plan proposed or confirmed in these cases without the prior written consent of Best Buy, and (d) be due and payable if and when any of the Debtor's obligations arise under the Best Buy APA without further order of the Court.

9. Except for a chapter 11 plan co-sponsored by Best Buy, nothing contained in any chapter 11 plan confirmed in the Chapter 11 Case or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the Best Buy APA or this Order, and to the extent of any conflict or derogation between this Order or the Best Buy APA and such future plan or order, the terms of this Order and the Best Buy APA shall control. The order confirming a chapter 11 plan co-sponsored by the Debtor and Best Buy shall contain the same material terms and provisions as this order.

### III.     Sale and Transfer Free and Clear of Claims

10.	Except as otherwise expressly provided in the Best Buy APA and the terms of this Order with respect to Assumed Liabilities, the Included Assets shall be sold free and clear of all claims, liens, liabilities, interests, rights and encumbrances against the Debtor, its predecessors, affiliates and/or subsidiaries, and their assets, including, without limitation, the following: all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims (including without limitation pursuant to WARN), employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this Chapter 11 Case, and whether imposed by agreement, understanding, law, equity or otherwise, including

claims otherwise arising under any theory, law or doctrine of successor liability (all of the foregoing collectively being referred to in this Order as "Claims", and, as used in this Order such term includes, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof) with all such Claims to attach to the consideration to be received by the Debtor with the same validity, force, priority and effect which they now have as against the Included Assets and subject to any claims and defenses the Debtor or other parties may possess with respect thereto. As used in this Order, the term "Liens" includes, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof. The provisions of this paragraph are intended to have the maximum extent permissible under law and the failure of any specific provision of this Order to enumerate each of the foregoing in referencing the transfer of the Included Assets "free and clear" of Claims, Liens, liabilities, rights, interests and encumbrances whatsoever against the Debtor and its predecessors, affiliates and/or subsidiaries (including (i) Partsearch Technologies, Inc. (Canada), a company organized under the laws of the Province of British Columbia and (ii) Partstore, LLC, a Delaware limited liability company), or their respective assets, shall not limit this broad effect.

11.     At Closing, all of the Debtor's right, title and interest in and to, and possession of, the Included Assets shall be immediately vested in Best Buy pursuant to Sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of any and all Claims, Liens, liabilities, rights, interests and encumbrances whatsoever except for Assumed Liabilities. Such transfer shall constitute a legal, valid, binding and effective transfer of such Included Assets. All persons or entities (and their respective successors and assigns), presently or on or after the Closing, in possession of some or all of the Included Assets are directed to surrender possession of the

Included Assets to Best Buy or its respective designees on the Closing or at such time thereafter as Best Buy may request.

12. This Order (a) shall be effective as a determination that, as of the Closing; (i) no Claims, Liens, liabilities, rights, interests and encumbrances whatsoever (other than Assumed Liabilities) will be capable of being asserted against Best Buy or any of its affiliates, members, officers, directors, shareholders, their assets or the Included Assets; (ii) the Included Assets shall have been transferred to Best Buy free and clear of all Claims, Liens, liabilities, rights, interests and encumbrances whatsoever (other than Assumed Liabilities); and (iii) the conveyances described herein have been effected; and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Best Buy APA. The Included Assets are sold free and clear of any reclamation rights.

13. Except as otherwise expressly provided in the Best Buy APA, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors

holding Claims, Liens, liabilities, rights, interests and encumbrances whatsoever (other than Assumed Liabilities) arising under or out of, in connection with, or in any way relating to, the Debtor and its predecessors, affiliates and/or subsidiaries, the Included Assets, the ownership, sale or operation of the Included Assets and the business prior to Closing or the transfer of the Included Assets to Best Buy, are hereby forever barred, estopped and permanently enjoined from asserting such Claims, Liens, liabilities, rights, interests and encumbrances whatsoever against Best Buy or any of its affiliates, members, officers, directors, shareholders, their assets or the Included Assets. Following the Closing, no holder of any Claims, Liens, liabilities, rights, interests and encumbrances whatsoever (other than Assumed Liabilities) shall interfere with Best Buy's title to or use and enjoyment of the Included Assets based on or related to any such Claims, Liens, liabilities, rights, interests and encumbrances whatsoever, or based on any action the Debtor may take in this Chapter 11 Case. The foregoing includes, without limitation, any right of setoff, right of subrogation or recoupment of any kind under Assumed Contracts or otherwise.

14.     If any person or entity that has filed financing statements, mortgages, mechanic's Claims, lis pendens or other documents or agreements evidencing Claims, Liens, liabilities, rights, interests and encumbrances whatsoever against or in the Included Assets shall not have delivered to the Debtor prior to the Closing of the Best Buy Transactions, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims, Liens, liabilities, rights, interests and encumbrances whatsoever that the person or entity has with respect to the Included Assets or otherwise, then only with regard to the Included Assets that are purchased by Best Buy pursuant to the Best Buy APA and this Order (a) the Debtor is hereby authorized and directed to execute and file such statements, instruments,

releases and other documents on behalf of the person or entity with respect to the Included Assets; (b) Best Buy is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims, Liens, liabilities, rights, interests and encumbrances whatsoever against Best Buy and the applicable Included Assets; and (c) Best Buy may (but shall not be required to) seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Claims, Liens, liabilities, rights, interests and encumbrances whatsoever with respect to the Included Assets other than Assumed Liabilities. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office.

15. To the maximum extent permitted under applicable law, Best Buy shall be authorized, as of the Closing, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Included Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to Best Buy as of the Closing.

16. To the extent permitted by Bankruptcy Code Section 525, no governmental unit may revoke or suspend any permit or license relating to the operation of the Included Assets sold, transferred, assigned or conveyed to Best Buy on account of the filing or pendency of this Chapter 11 Case or the consummation of the Best Buy Transactions.

17. For the avoidance of doubt, only Included Assets that are part of the estate of the Debtor are being sold to Best Buy free and clear of Claims, Liens, liabilities, rights, interests and encumbrances whatsoever (other than Assumed Liabilities) pursuant to Section 363(f) of the

Bankruptcy Code. Without limiting the foregoing, to the extent the Debtor has not already done so, the Debtor shall be authorized to, and shall effect, transfer the assets of the Nondebtor Subsidiary Included Assets to the Debtor which shall be transferred and sold to Best Buy as Included Assets under the Best Buy APA and this Order.

## IV.    No Successor or Transferee Liability

18.    Best Buy shall not be deemed, as a result of any action taken in connection with the Best Buy APA, the consummation of the Best Buy Transactions contemplated by the Best Buy APA, or the transfer or operation of the Included Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtor and its predecessors, affiliates and/or subsidiaries (including (i) Partsearch Technologies, Inc. (Canada), a company organized under the laws of the Province of British Columbia and (ii) Partstore, LLC, a Delaware limited liability company); (b) have, *de facto* or otherwise, merged with or into the Debtor and its predecessors, affiliates and/or subsidiaries (including (i) Partsearch Technologies, Inc. (Canada), a company organized under the laws of the Province of British Columbia and (ii) Partstore, LLC, a Delaware limited liability company); or (c) be an alter ego or a mere continuation or substantial continuation of the Debtor and its predecessors, affiliates and/or subsidiaries (including (i) Partsearch Technologies, Inc. (Canada), a company organized under the laws of the Province of British Columbia and (ii) Partstore, LLC, a Delaware limited liability company), including, without limitation, within the meaning of any foreign, federal, state or local revenue, pension, the Employee Retirement Income Security Act ("ERISA"), the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), WARN (defined below), CERCLA (defined below), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National

Labor Relations Act, environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts or obligations of or required to be paid by the Debtor for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine. While not a successor to the Debtor, Best Buy will have the future obligations as an assignee of the Debtor under the Assumed Contracts as and to the extent such obligations first arise after the Closing.

19.     Best Buy shall not have any responsibility for: (a) any liability or other obligation of the Debtor and its predecessors, affiliates and/or subsidiaries (including (i) Partsearch Technologies, Inc. (Canada), a company organized under the laws of the Province of British Columbia and (ii) Partstore, LLC, a Delaware limited liability company), or related to the Included Assets other than as expressly set forth in the Best Buy APA with respect to Assumed Liabilities; or (b) any remaining Claims against the Debtor or any of its predecessors, affiliates and/or subsidiaries. Except as expressly provided in the Best Buy APA with respect to Best Buy, Best Buy shall have no liability whatsoever with respect to the Debtor's (or its predecessor's, affiliate's and/or subsidiaries') business or operation or any of the Debtor's (or its predecessor's, affiliate's and/or subsidiaries') obligations (as described herein, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or

products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Included Assets prior to the Closing. Best Buy shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) or similar law (together, "WARN") or the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), or any foreign, federal, state or local labor, employment, or environmental law whether of similar import or otherwise by virtue of Best Buy's purchase of the Included Assets or assumption of the Assumed Liabilities by Best Buy or an Affiliate of Best Buy.

20.     Nothing in this Order or the Best Buy APA shall require Best Buy to (a) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtor is a party or have any responsibility therefore including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

21.     Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against Best Buy, or its assets (including the Included Assets), with respect to any (a) Claims, Liens, liabilities, rights,

interests and encumbrances whatsoever (other than Assumed Liabilities) or (b) Successor or Transferee Liability including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien, claim, interest or encumbrance; (iv) asserting any setoff, right of subrogation or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Included Assets or conduct any of the businesses operated with such assets.

## V.     Good Faith of Best Buy

22.     The Best Buy Transactions contemplated by the Best Buy APA are undertaken by Best Buy without collusion and in good faith, as that term is defined in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Best Buy Transactions (including the assumption and assignment of the Assumed Contracts), unless such authorization and consummation of such sale are duly and properly stayed pending such appeal.

23.     Neither the Debtor nor Best Buy has engaged in any action or inaction that would cause or permit the Best Buy Transactions to be avoided or costs or damages to be imposed under Section 363(n) of the Bankruptcy Code. The consideration provided by Best Buy for the Included Assets under the Best Buy APA is fair and reasonable and the sale may not be avoided under Section 363(n) of the Bankruptcy Code. The sale of the Included Assets and the

consideration provided by Best Buy shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

## VI.  Assumption and Assignment of Assumed Contracts

24.    The Debtor is authorized and directed at the Closing to assume and assign each of the Assumed Contracts to Best Buy free and clear of all Claims, Liens, liabilities, rights, interests and encumbrances whatsoever (other than the Assumed Liabilities) pursuant to Sections 105(a), 363(b) and 365 of the Bankruptcy Code and to execute and deliver to Best Buy such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to Best Buy.  The payment of the applicable Cure Costs shall (a) effect a cure of all defaults existing thereunder as of the Closing, (b) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default, and (c) together with the assumption of the Assumed Contracts by the Debtor and the assignment of the Assumed Contracts to Best Buy or an Affiliate of Best Buy, constitute adequate assurance of future performance thereof.  There shall be no assumption of an Assumed Contract absent assignment of such Assumed Contract to Best Buy. Best Buy's obligations to pay Cure Costs shall be governed by the Best Buy APA and, without limiting the foregoing, Best Buy shall not be obligated to pay any Cure Costs in an amount in excess of the specified amount (if any) on Schedule 2.1(a) to the Best Buy APA for such Assumed Contract or otherwise expressly agreed to in writing by Best Buy.

25.    Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the counterparty to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and

conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to Best Buy or an Affiliate of Best Buy of the Assumed Contracts have been satisfied. Upon the Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code, Best Buy shall be fully and irrevocably vested with all right, title and interest of the Debtor under the Assumed Contracts, and such Assumed Contracts shall remain in full force and effect for the benefit of Best Buy. Each non-Debtor counterparty to the Assumed Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtor or Best Buy or their respective property any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing or arising by reason of the Closing, including any breach related to or arising out of change-in-control in such Assumed Contracts, or any purported written or oral modification to the Assumed Contracts and (b) asserting against Best Buy (or its property, including the Included Assets) any claim, counterclaim, defense, breach, condition, setoff asserted or capable of being asserted against the Debtor existing as of the Closing or arising by reason of the Closing except for the Assumed Liabilities.

26.     Until Closing (the "Designation Period"), Best Buy shall be permitted to designate additional Contracts (the "Purchaser Designation Rights") that will be (i) assumed by the Debtor and assigned to Best Buy and become Assumed Contracts (the "Proposed Assumed Contracts") or (ii) excluded by Best Buy from the Assumed Contracts set forth in Schedule 2.1(a) of the Best Buy APA. Prior to the expiration of the Designation Period, the Debtor shall not reject any contracts, other than in accordance with this Order and the Best Buy APA. Within seven (7) days of receipt by the Debtor of prior written notice by Best Buy of an exercise of Best Buy Designation Rights requiring assumption by the Debtor and assignment to Best Buy of any

Proposed Assumed Contract, the Debtor shall file a notice of assumption and assignment ("Assumption Notice") with the Bankruptcy Court and serve a copy of such notice on each non-Debtor party to the subject Proposed Assumed Contract (each, a "Contract Counterparty"), setting forth a description of each Proposed Assumed Contract. No later than seven (7) days after the date on which the Debtor serves an Assumption Notice, the Debtor will file with the Court an order authorizing the assumption/assignment of the Assumed Contracts listed in the Assumption and Assignment Notice which provides: (1) that the assumption of such Assumed Contracts are approved, final and effective, pursuant to Section 365 of the Bankruptcy Code; and (2) Best Buy provided adequate assurance of future performance under the applicable contract in accordance with Section 365(f)(2)(B). For the avoidance of doubt, the assumption and assignment of and provision of adequate assurance of future performance under Assumed Contracts for which the non-debtor counterparty has been previously noticed pursuant to the Sale Procedures Order is hereby approved without the need for further notice or hearing.

27. Until a Contract is assumed and assigned as set forth herein, it shall not be considered to be either assumed or assigned and shall remain subject to designation in accordance with Best Buy Designation Rights.

28. Upon the Closing and the payment of the relevant Cure Costs by the Debtor or Best Buy as set forth in the Best Buy APA, Best Buy shall be deemed to be substituted for the Debtor as a party to the applicable Assumed Contracts and the Debtor shall be released, pursuant to Section 365(k) of the Bankruptcy Code, from any liability under the Assumed Contracts. There shall be no rent accelerations, assignment fees, increases or any other fees charged to Best Buy or the Debtor as a result of the assumption and assignment of the Assumed Contracts.

29.    Each non-debtor party to an Assumed Contract is forever barred, estopped and permanently enjoined from asserting against Best Buy, or its property (including without limitation the Included Assets), any default existing as of the date of the Sale Hearing, or any counterclaim, defense, setoff or other claim asserted or capable of being asserted against the Debtor.  Other than the Assumed Contracts, Best Buy assumed none of the Debtor's other contracts and leases and shall have no liability whatsoever thereunder.

30.    The assignments of each of the Assumed Contracts are made in good faith under Sections 363(b) and (m) of the Bankruptcy Code.

## VII.    Other Provisions

31.    The requirements set forth in Rule 6003(b) of the Bankruptcy Rules are satisfied by the contents of the Motion or otherwise deemed waived.

32.    Best Buy shall not be required to seek or obtain relief from the automatic stay under Section 362 of the Bankruptcy Code to enforce any of its remedies under the Best Buy APA or any other sale-related document.  The automatic stay imposed by Section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, provided however that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

33.    This Order does not approve or provide for the transfer to Best Buy of any avoidance claims of the Debtor's estate.

34.    Best Buy is not and will not become obligated to pay any fee or commission or like payment to any broker, finder or financial advisor as a result of the consummation of the transactions contemplated by the Best Buy APA based upon any arrangement made by or on behalf of the Debtor.

35. This Order is binding upon and inures to the benefit of any successors and assigns of the Debtor or Best Buy, including any trustee appointed in any subsequent case of the Debtor under chapter 7 of the Bankruptcy Code.

36. No further order or approval of any type is required for Best Buy and the Debtor to close the Best Buy Transactions and Best Buy APA. The provisions of this Order and the Best Buy APA are non-severable and mutually dependent.

37. The Best Buy APA may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

38. The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Best Buy APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to Best Buy, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale. This Court retains jurisdiction to compel delivery of the Included Assets, to protect Best Buy and its assets, including the Included Assets, against any Claims, Liens, liabilities, rights, interests and encumbrances whatsoever and Successor and Transferee Liability (other than Assumed Liabilities) and to enter orders, as appropriate, pursuant to Sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Included Assets and the Assumed Contracts to Best Buy.

39. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062 and 9014 or otherwise, the terms and conditions of this Order shall be effective

immediately upon entry and the Debtor and Best Buy are authorized to close the sale immediately upon entry of this Order.

40.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

41.     To the extent any provisions of this Order conflict with, or are otherwise inconsistent with, the terms and conditions of the Best Buy APA or the Sale Procedures Order, this Order shall govern and control, and to the extent the Motion conflicts with, or is otherwise inconsistent with, the terms and conditions of the Best Buy APA, the terms and conditions of the Best Buy APA shall govern and control.

42.     Upon Best Buy's deposit of the "Purchase Price Deposit" in the amount of $3,202,500 (inclusive of Best Buy's initial deposit) into escrow pursuant to the Escrow Agreement, the Debtor may pay the $100,000 Break-Up Fee to ELDIS, Inc. from estate funds.


New York, New York
Date: _____, 2011          _____
                                     The Honorable Martin Glenn
                                     United States Bankruptcy Judge