William R. Baldiga, Esq.
Sunni P. Beville, Esq.
Nina E. Andersson, Esq.
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to the Debtor
and the Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br><br> PARTSEARCH TECHNOLOGIES, INC.,[1] <br><br> Debtor | ) Chapter 11 <br> ) <br> ) Case No. 11-10282 <br> ) <br> ) <br> ) |

### DECLARATION OF LAWTON W. BLOOM IN SUPPORT OF CONFIRMATION OF DEBTOR'S FIRST MODIFIED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Lawton W. Bloom declares as follows:

1. I am the Chief Restructuring Officer of Partsearch Technologies, Inc. (the "Debtor").

2. I assisted the Debtor in preparing to file this chapter 11 case (the "Case" or the "Chapter 11 Case") and have been involved on a daily basis in the administration and monitoring of this Case. I was an active participant, along with Debtor's legal counsel, in the formulation of the *Debtor's First Modified Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* dated August 16, 2011 (together with any subsequent

---

[1] The Debtor's last four digits of its taxpayer identification number is 5335. Partsearch Technologies, Inc. is a Delaware corporation qualified to do business in the State of New York.

modifications, the "Plan").[2]

3. I submit this Declaration in support of the Debtor's request for confirmation of the Plan.

4. On January 27, 2011, I submitted the *Affidavit of Lawton W. Bloom in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2* [Docket No. 2] (the "First Day Affidavit"), and I incorporate the facts set forth therein as if fully set forth in this Declaration.[3]

5. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents or information provided to me by employees working under my supervision. If called upon, I could and would testify competently to the facts set forth herein.

A. **Background**

6. On January 25, 2011, certain unsecured creditors filed an involuntary petition under chapter 7 of the Bankruptcy Code against the Debtor. On January 27, 2011, the Debtor filed its own voluntary petition for relief under chapter 11 of the Bankruptcy Code, and on February 2, 2011, the Court entered an order consolidating the Debtor's chapter 7 and chapter 11 cases and converting the chapter 7 case to a chapter 11 case for all purposes (the "Chapter 11 Case"). The "Petition Date" for the Debtor's bankruptcy case is deemed January 25, 2011, and the date an order of relief was entered with respect to the Debtor's bankruptcy case is deemed January 27, 2011.

---

[2] Capitalized terms used herein and not defined shall have the meanings ascribed to them in the Plan.

[3] The First Day Affidavit sets forth, *inter alia,* the history of the Debtor's business, the events leading to this Chapter 11 Case, and my qualifications.

2

7. The Debtor has continued in possession of its property as debtor-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case.

8. On February 8, 2011, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in this Chapter 11 Case.

9. On January 27, 2011, the Debtor filed its Motion for Sale of Property under Section 363(b) with respect to the sale of substantially all of its assets (the "Sale"). On March 28, 2011 an order was entered approving the Sale.

10. On July 20, 2011 the Debtor filed its proposed Plan of Reorganization Under Chapter 11 of the Bankruptcy Code and the Disclosure Statement in Support of the Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code.

11. On August 16, 2011, the Debtor filed the Plan and its First Modified Disclosure Statement in Support of the Debtor's First Modified Plan of Reorganization Under Chapter 11 of the Bankruptcy Code. On August 24, 2011, the Debtor filed its Second Modified Disclosure Statement in Support of the Debtor's First Modified Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Disclosure Statement").

12. On August 25, 2011, the Court entered the Order (i) Approving Disclosure Statement; (ii) Establishing Voting Deadline and Procedures for Filing Objections to Confirmation of Plan; (iii) Approving Form of Ballot; and (iv) Establishing Solicitation and Tabulation Procedures (the "Disclosure Statement Order"). The Disclosure Statement Order, *inter alia*, (a) approved the Disclosure Statement; (b) established procedures for soliciting and tabulating votes to accept or reject the Plan; and (c)

scheduled a hearing on confirmation of the Plan for October 4, 2011 at 10:00 a.m. the "Confirmation Hearing").

13. The Debtor, through its claims and noticing agent, The Garden City Group, Inc., caused a copy of the Disclosure Statement, the Plan and appropriate ballots to be mailed to each party in interest entitled to vote on the Plan in accordance with the Disclosure Statement Order and as set forth in the Declaration of Patrick M. Leathem of The Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes On and Results of Voting with Respect to the Debtor's First Modified Plan of Reorganization Under Chapter 11 of the Bankruptcy Code and exhibits thereto filed on September 27, 2011 (the "Voting Report").

B. **Compliance with the Bankruptcy Code**

14. On the basis of my understanding of the Plan, the Bankruptcy Code and events occurring before and throughout the Chapter 11 Case, I believe that the Plan fully complies with all of the applicable requirements of the Bankruptcy Code.

15. Section 1129(a)(1). I am advised and believe that the Plan complies with the applicable provisions of the Bankruptcy Code as required by Section 1129(a)(1) of the Bankruptcy Code.

16. Proper Classification (Sections 1122 and 1123(a)(1)). Article V of the Plan designates 3 Classes of Claims and one Class of Equity Interest and Subordinated Equity Claims. I am familiar with the classification of Claims and Equity Interests in the Plan and believe that such classification system is based upon the legal nature and relative rights of the Claims and Equity Interests, and is not proposed for any improper

purposes. Each Class contains only Claims or Equity Interests that are substantially similar to other Claims and Equity Interests therein.

17. <u>Specification of Treatment of Unimpaired Claims (Section 1123(a)(2))</u>. Articles V of the Plan specifies all Classes of Claims that are Unimpaired and Article VI of the Plan specifies the treatment of all Classes of Claims that are Unimpaired.

18. <u>Specification of Treatment of Impaired Claims (Section 1123(a)(3))</u>. Article V of the Plan specifies all Classes of Claims and Equity Interests that are Impaired and Article VI of the Plan sets forth the treatment of each Class of Claims and Equity Interests that are Impaired.

19. <u>No Discrimination (Section 1123(a)(4))</u>. Article VI of the Plan provides the same treatment for each type of Claim or Equity Interest within a particular Class, unless the holder of a particular Claim or Equity Interest has agreed to different treatment.

20. <u>Implementation of the Plan (Section 1123(a)(5))</u>. Article IX of the Plan and various other provisions of the Plan provide adequate and proper means for implementation of the Plan.

21. <u>Non-Voting Equity Securities (Section 1123(a)(6))</u>. The Reorganized Debtor's new organizational documents shall be amended as necessary to comply with the Plan and the Bankruptcy Code.

22. <u>Selection of Officers and Directors (Section 1123(a)(7))</u>. In accordance with Articles IX and X of the Plan and the Plan Trust Agreement, Todd Hartman has been identified as the director of the Reorganized Debtor and shall select the officers of the Reorganized Debtor. I believe the selection of Todd Hartman to serve as the director

of the Reorganized Debtor is consistent with applicable law, public policy and the interests of creditors.

23. <u>Impairment of Classes (11 U.S.C. § 1123(b)(1))</u>. Articles V and VI of the Plan impair or leave unimpaired, as the case may be, each Class of Claims or Equity Interests under the Plan.

24. <u>Treatment of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>. All remaining executory contracts and unexpired leases that exist between the Debtor and any Person shall be deemed rejected as of the Confirmation Date, except for any executory contract or unexpired lease (a) expressly assumed by the Debtor prior to the Confirmation Date, (b) are the subject of a pending motion by the Debtor, as of the Confirmation Date, to assume or (c) are assumed pursuant to the Plan including those listed on Schedule B.1 assumed by the Plan Trust and Schedule B.2 assumed by the Reorganized Debtor, each of which are annexed to the Plan.

25. <u>Additional Plan Provisions (Section 1123(b))</u>. The Plan also includes provisions for (1) releases of various Persons and entities, exculpation of various Persons and entities with respect to actions related to or taken in furtherance of the Chapter 11 Case and injunctions against certain actions against the Debtor, its Estate and its properties; (2) the disposition of executory contracts and unexpired leases; (3) the retention of and right to enforce, sue on, settle or compromise (or decline to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not settled, waived and released under the Plan; (4) the resolution of all Claims and the treatment of Disputed Claims; (5) the allowance of certain Claims;

(6) indemnification obligations; and (7) the implementation of the Plan Trust, respectively, and the procedures for making distributions pursuant to the Plan.

26. <u>Debtor's Compliance with Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2))</u>. To the best of my knowledge, and based on my discussions with Debtor's legal counsel, (1) the Debtor, as Plan proponent, has complied with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules; and (2) the solicitation of acceptances or rejections of the Plan complied with the Disclosure Statement Order and all applicable laws, rules and regulations.

27. <u>The Plan is Proposed in Good Faith (Section 1129(a)(3))</u>. To the best of my knowledge, the Debtor has proposed the Plan in good faith and not by any means forbidden by law. The Debtor, as Plan proponent, negotiated the Plan and Plan Documents in good faith, at arm's length and with the legitimate and honest purpose of liquidating the Debtor's remaining assets and distributing any proceeds to holders of Claims and Equity Interests. I believe that this conclusion is supported by the substantial negotiations related to the Plan among the Debtor, the Committee and Best Buy Enterprise Services, Inc. ("<u>Best Buy</u>") as Plan Sponsor. I further believe that the overwhelming acceptance of the Plan by holders of Claims that voted, reflect the overall fairness of the Plan and the acknowledgment by the Debtor's stakeholders that the Plan has been proposed in good faith and for proper purposes.

28. <u>Payments for Services or Costs and Expenses are Reasonable and Approved (Section 1129(a)(4))</u>. To the best of my knowledge, any payments made, or to be made, by the Debtor for services or for costs in connection with the Chapter 11 Case, including all administrative expense and substantial contribution claims under Sections

503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable. In addition, fees and expenses incurred by Professionals Persons retained by the Debtor or the Committee shall be payable according to the Orders approving such Professional Persons' retention applications, the Plan, and the Confirmation Order.

29. <u>Directors, Officers, Trustees and Insiders (Section 1129(a)(5))</u>. Article IX of the Plan identifies the initial director of the Reorganized Debtor and provides for the selection of the officers of the Reorganized Debtor.

30. <u>No Rate Changes (Section 1129(a)(6))</u>. The Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

31. <u>Best Interests Test (Section 1129(a)(7))</u>. With respect to each Impaired Class, each holder of a Claim or Equity Interest against the Debtor has accepted the Plan or will receive or retain under the Plan as much or more than they would receive if the Chapter 11 Case was converted to a case under Chapter 7 of the Bankruptcy Code.

32. <u>Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (Section 1129(a)(9))</u>. The treatment of Administrative Claims under Article IV of the Plan provides for (i) payment in Cash in the amount of the Allowed Claim on the Plan Distribution Date, (ii) payment in the ordinary course of business, or (iii) such other treatment as agreed to in writing by the Debtor or the Plan Trustee, as the case may be, and the holder of such Claim.

33. <u>Acceptance by at Least One Impaired Class (Sections 1129(a)(8) and 1129(a)(10))</u>. As provided in the Voting Report, at least one Class of Impaired Claims

entitled to vote has accepted the Plan, determined without including any acceptance of the Plan by an insider.

34. <u>Feasibility of the Plan (Section 1129(a)(11))</u>. Pursuant to the terms of the Sale, on the Effective Date, the Reorganized Debtor will issue to Best Buy 100% of its 100 New Common Shares. In consideration, Best Buy will pay to the Debtor's estate Cash in the amount of $1,321,355 in exchange for twenty-five (25) New Common Shares and deem satisfied the amount of $8,850,000 of the Best Buy Claim in exchange for seventy-five (75) New Common Shares. Also on the Effective Date, in exchange for the allowance of the Best Buy Claim, and in full satisfaction of all prepetition amounts payable by Best Buy to the Debtor under the Best Buy Services Agreement, Best Buy will pay to the Debtor's estate Cash in the amount of $5,083,645 ($3,202,500 of which Best Buy has already deposited in escrow). Title to the Included Assets and the Assumed Liabilities shall vest in the Reorganized Debtor. Furthermore, as contemplated under the Plan, the Plan Trust will liquidate those of the Debtor's remaining assets to be transferred to the Plan Trust on the Effective Date, make distributions pursuant to the Plan and the Plan Trust will not carry on a business or trade and only survive for the duration of time required to liquidate or otherwise administer the Debtor's remaining assets. Thus, I believe the Plan is feasible and confirmation of the Plan is not likely to be followed by the Debtor or the Reorganized Debtor either liquidating or requiring further financial reorganization.

35. <u>Payment of Bankruptcy Fees (Section 1129(a)(12))</u>. Sections 4.3 and 17.11 of the Plan provide for the payment of all fees payable under 28 U.S.C. § 1930(a).

36. <u>Retiree Benefits (Section 1129(a)(13))</u>. The Plan does not alter any retiree benefits to the extent any such benefits currently exist.

37. <u>Domestic Support Obligations (Section 1129(a)(14))</u>. The Debtor is not required to pay any domestic support obligations.

38. <u>Individual Debtor with Objection by Unsecured Claimant (Section 1129(a)(15))</u>. The Debtor is not an individual; accordingly, I am informed that Section 1129(a)(15) of the Bankruptcy Code is not applicable.

39. <u>Corporation or Trust That is Not Moneyed, Business or Commercial Corporation or Trust (Section 1129(a)(16))</u>. The Debtor is a moneyed, business or commercial corporation; accordingly, I am informed that Section 1129(a)(16) of the Bankruptcy Code is not applicable.

40. <u>Fair and Equitable (Section 1129(b))</u>. The Plan does discriminate unfairly and I believe the Plan is fair and equitable as to all holders of Impaired Claims and Equity Interests in the Debtor.

41. <u>Principal Purpose of the Plan (Section 1129(d))</u>. The principal purpose of the Plan is to distribute the proceeds from the Sale and any other recoveries from the Plan Trust Assets for the benefit of the Debtor's estate and its creditors, and thus is not for the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

42. <u>Bankruptcy Rule 3016(a)</u>. The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

43. <u>Bankruptcy Rule 3016(c)</u>. The Plan, specifically Article XIII, describes in specific and conspicuous language the injunction, exculpation and limitation of liabilities provided for in the Plan.

44. <u>Releases and Discharges</u>. I believe that the injunctions, releases, limitation of liabilities and discharges of Claims and causes of action described in Sections 13.3, 13.4 and 13.5 of the Plan constitute good faith compromises and settlements of the matters covered thereby. I believe that such compromises and settlements are made in exchange for adequate consideration and are in the best interests of holders of Claims and Interests, are fair, necessary, equitable and reasonable, and are integral elements of the resolution of this Chapter 11 Case in accordance with the Plan. The exculpation provisions of the Plan with respect to the Debtor, as described in Article XIII of the Plan, are limited to those actions taken and persons serving with the Debtor from and after November 1, 2010. On and after November 1, 2010, the Debtor's operations ceased and the Debtor retained Argus Management Corporation and Brown Rudnick to prepare for a possible chapter 11 filing or other type of wind-down or restructuring. A decision was subsequently made to resume business operations on a very limited basis in the hopes of effecting a sale of the business as a going concern. Prior to November 1, 2010, allegations of intentional overbilling of the Debtor's customers and other financial improprieties arose. The Plan Trustee will consider whether or not there are causes of action related to any wrongdoing on the part of any person, including perhaps any one or more of the then serving officers or directors of the Debtor, and he will pursue such causes of action if he determines they have merit. Accordingly, the exculpation provision has been narrowly tailored to exclude actions taken prior to

November 1, 2010 so that the Plan Trust is able to pursue such potential causes of action, if appropriate, while providing exculpation for actions taken by individuals working with the Debtor on and after November 1, 2010 without affecting the possibility of claims being brought on account of the actions taken by the Debtor prior to such date. Further, the releases are consensual as evidenced by the acceptance of the Plan by Classes 2a and 2b demonstrated in the Voting Report.

45. <u>Likelihood of Satisfaction of Conditions Precedent to Effectiveness</u>. To the best of my knowledge, each of the conditions precedent to the Effective Date, as set forth in Article XIV of the Plan, is reasonably likely to be satisfied or waived in accordance with the provisions of Article XIV of the Plan.

46. <u>Insurance Coverage</u>. The Debtor maintains an insurance policy in an aggregate liability amount of $3,000,000 for directors, officers and entity liability, employment practices liability and fiduciary liability with The Hartford insurance company (the "<u>D&O Policy</u>"). On or about March 14, 2011, at a time when the D&O Policy was in effect, bankruptcy counsel to Partsearch sent a notification of claim letter to the insurer notifying it of possible derivative claims that may be asserted by the Committee and possible direct claims that may be asserted by Best Buy against the Debtor's officers, directors and managers for various alleged wrongdoings. Pursuant to the terms of the Plan, Best Buy's direct claims against the Debtor and its officers, directors and managers have been released. To my knowledge, there have been no other claims against the D&O Policy reported to the insurer by the Debtor or any other party.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      September 28, 2011

                                                            Lawton W. Bloom
                                                            Chief Restructuring Officer
                                                            Partsearch Technologies, Inc.

# 1858883 v3